# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ALIZA RODGERS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALL IN FEDERAL CREDIT )<br>UNION, )<br>)<br>Defendant. ) | CIVIL ACTION CASE NUMBER:<br><br>2:25-cv-167<br><br>PLAINTIFF DEMANDS A TRIAL<br>BY STRUCK JURY |

## COMPLAINT

## JURISDICTION AND VENUE

1. This is an employment discrimination action in which the Plaintiff, Aliza Rodgers, alleges that the Defendant, All In Federal Credit Union, violated Title VII of the Civil Rights Act of 1964, as amended, when it alleges that her former employer subjected her to a retaliatory hostile work environment that resulted in her constructive discharge.

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper because the Defendant employed the Plaintiff in Dale

County, Alabama which is part of the Southern Division of the Middle District of Alabama.

## PARTIES

4. The Plaintiff, Aliza Rodgers, is an adult resident of the State of Alabama.

5. The Defendant, All In Federal Credit Union ("AIFCU"), is a domestic non-profit corporation formed in the state of Alabama.

6. AIFCU's website is https://allincu.com/.

7. AIFCU employed fifteen or more employees for twenty calendar weeks in 2022.

8. AIFCU employed fifteen or more employees for twenty calendar weeks in 2023.

9. AIFCU employed fifteen or more employees for twenty calendar weeks in 2024.

10. AIFCU employed fifteen or more employees for twenty calendar weeks in 2025.

11. AIFCU employed the Plaintiff from March 2022, 2021, through June 8, 2023.

## ADMINISTRATIVE REMEDIES

12. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on August 22, 2023.

(**Exhibit 1**).

13. On November 29, 2024, the EEOC issued a Determination and Notice of Rights to Plaintiff. **(Exhibit 2).**

14. Plaintiff filed this action within 90 days of November 29, 2024.

15. Rodgers timely initiated this action.

16. Rodgers fulfilled all conditions precedent to the institution of this lawsuit.

## FACTUAL BACKGROUND

17. Rodgers is a bi-racial female.

18. Rodgers started work for AIFCU on March 22, 2021.

19. Rodgers began her employment with AIFCU as a part-time teller.

20. Rodgers graduated high school in May 2021.

21. Within approximately a month to six-weeks of Rodgers beginning her employment with AIFCU, the company made her a full-time floater teller.

22. On August 9, 2021, AIFCU promoted Rodgers to member service representative.

23. In November/December 2021, Rodgers applied for a recruiting coordinator position.

24. In December 2021, AIFCU, through Douglas Mullins, offered Rodgers the recruiting coordinator position.

25. On January 1, 2022, AIFCU placed Rodgers in a recruiting coordinator

3

position.

26. Rodgers earned $19.71 an hour as a recruiting coordinator position.

27. Rodgers' required work hours were 7:30 am to 5:00 pm, with a break for lunch.

28. Rodgers worked more than 40 hours a week.

29. AIFCU paid Rodgers $29.56, or time-and-a-half her regular hourly rate, for time she worked in excess of 40 hours a week.

30. Upon information and belief, Douglas Mullins made the decision to put Rodgers in the recruiting coordinator position.

31. As a recruiting coordinator, Rodgers worked under Mullins' supervision.

32. Mullins is older than Rodgers by decades.

33. Mullins did not provide Rodges with training for the recruiting coordinator position.

34. Instead, Mullins found reasons to meet with Rodgers alone.

35. In closed-door meetings Mullins held with Rodgers, he stood too close to her, touched her knee, rubbed her arm, rubbed her leg, stared at her breasts and pelvic region, made her pull his chair next to his when she went into his office, and made her feel uncomfortable.

36. Rodgers believed in good faith that Mullins' conduct was sexual harassment.

37. Mullins' conduct intensified and made Rodgers even more uncomfortable

and fearful of working with him.

38. Finally, on or around September 9 or 10, 2022, Rodgers complained to Lisa Hales, Senior Vice President of Member Experience for AIFCU, that Mullins was sexually harassing Rodgers.

39. In response, AIFCU put Rodgers on administrative leave pending its investigation of her complaint against Mullins.

40. After Rodgers complained, she received an email from AIFCU that Mr. Mullins had resigned.

41. On or about September 14, 2022, AIFCU retained outside counsel to investigate Rodgers' complaint of sexual harassment.

42. Mullins resigned on or about September 21, 2022.

43. Prior to Rodgers complaining of sexual harassment, her coworkers were friendly to her.

44. After Rodgers complained, her coworkers stopped speaking to her unless it was necessary for work.

45. Where Rodgers' coworkers and superiors addressed her using her first name before she complained, they all called her "Ms. Rodgers" following her complaint.

46. Rodgers experienced heighted scrutiny from her managers and supervisors after her complaint of sexual harassment.

47. Rodgers' managers and/or supervisors criticized her clothing as being outside the dress code after Rodgers' complained of sexual harassment.

48. Based on how her coworkers, supervisors, and managers treated Rodgers after she complained, she felt that they all blamed her for Mullins leaving and did not want Rodgers working with them because she had complained.

49. Rodgers heard her coworkers call her a walking liability.

50. In January 2023, Kathleen Morris became AIFCU's Vice President of Human Resources.

51. AIFCU had Rodgers report to Morris.

52. Rodgers experienced hostility from Morris.

53. Morris was overly critical of Rodgers' performance without providing Rodgers any training or guidance on how to correct whatever alleged deficiencies Morris identified.

54. Morris spoke to Rodgers like an infant.

55. Morris spoke to Rodgers in a demeaning manner.

56. Rodgers did not observe Morris speak in a demeaning manner to white employees.

57. Rodgers did not observe Morris speak in a demeaning manner to employees who had not complained of sexual harassment.

58. Morris was overly critical of Rodgers, including looking Rodgers up and

down and telling her that trousers she wore to work were out of dress code.

59. Morris repeatedly called Rodgers into her office to criticize her.

60. Morris made Rodgers feel like Morris was looking for a reason to fire Rodgers.

61. In June 2023, Morris gave Rodgers a poor performance evaluation.

62. Rodgers disagreed that the evaluation accurately reflected her performance.

63. Rodgers provided Morris with rebuttal information to the evaluation, but Morris did not make any changes.

64. Rodgers believed the performance evaluation was an effort by Morris and AIFCU to manage Rodgers out of her job.

65. Due to what Rodgers perceived as a retaliatory hostile work environment and what Rodgers believed to be efforts to make a case to fire her, Rodgers resigned her employment on June 8, 2023.

## COUNT I
## RETALIATION
## (HOSTILE WORK ENVIRONMENT)
## TITLE VII

66. For purposes of context, Rodgers adopts and incorporates the facts set forth above.

67. Section 704(a) of Title VII of the Civil Rights Act prevents retaliation by employers. The relevant statutory language reads:

> It shall be an unlawful employment practice for an

>employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

68. Rodgers engaged in activity protected by Title VII when she complained to the AIFCU of sexual harassment.

69. After Rodgers complained of sexual harassment, AIFCU put her on administrative leave.

70. After Rodgers complained of sexual harassment, she immediately began experiencing conduct which would deter a reasonable person from engaging in protected activity. The conduct she experienced included, but was not limited to being ostracized by her superiors and coworkers, heightened scrutiny and undue criticism from those in positions of influence or authority over her, hostile treatment from the Vice President of Human Resources including being spoken to in a demeaning manner, efforts to make a paper trail to either justify termination or encourage Rodgers' resignation, an unwarranted poor performance evaluation where Rodgers' rebuttal was ignored, and being called a walking liability.

71. Due to what Rodgers perceived as a retaliatory hostile work environment and what Rodgers believed to be efforts to make a case to fire her, Rodgers resigned her employment on June 8, 2023.

72. The retaliatory hostile work environment created and/or permitted by the Defendant injured Rodgers.

WHEREFORE, PREMISES CONSIDERED, Rodgers requests this Court enter a judgment against All In Federal Credit Union under Title VII of the Civil Rights Act of 1964, as amended, pursuant to an Order by which this Court:

    a. Awards compensatory damages, including backpay, to be determined by the trier of fact;

    b. Awards punitive damages to be determined by the trier of fact;

    c. Awards nominal damages to be determined by the trier of fact;

    d. Awards injunctive and equitable relief including, but not limited to, training, backpay, reinstatement and/or reasonable front pay, and modification of Rodgers's personnel file(s);

    e. Awards that relief which is fair, reasonable, and just;

    f. Awards costs against All In Federal Credit Union including a reasonable attorney's fee.

## COUNT II
## RETALIATION
## (CONSTRUCTIVE DISCHARGE)
## TITLE VII

73. For purposes of context, Rodgers adopts and incorporates the facts set forth above.

74. Rodgers engaged in activity protected by Title VII when she complained to

the AIFCU of sexual harassment.

75. AIFCU put Rodgers on administrative leave when she complained of sexual harassment.

76. After Rodgers complained of sexual harassment, she immediately began experiencing conduct which would deter a reasonable person from engaging in protected activity. The conduct she experienced included, but was not limited to being ostracized by her superiors and coworkers, heightened scrutiny and undue criticism from those in positions of influence or authority over her, hostile treatment from the Vice President of Human Resources including being spoken to in a demeaning manner, efforts to make a paper trail to either justify termination or encourage Rodgers' resignation, an unwarranted poor performance evaluation where Rodgers' rebuttal was ignored, and being called a walking liability.

77. Rodgers resigned from her employment on June 8, 2023, due to the ongoing retaliation which she experienced.

78. Rodgers' resignation was a constructive discharge.

79. Defendant retaliated against Rodgers when it permitted and/or engaged in conduct which constructively discharged the Plaintiff from her employment.

80. Defendant's actions were intended to punish Rodgers for engaging in protected activity as well as to discourage and dissuade further protected

activity.

81. Defendant's actions injured Rodgers.

WHEREFORE, PREMISES CONSIDERED, Rodgers requests this Court enter a judgment against All In Federal Credit Union under Title VII of the Civil Rights Act of 1964, as amended, pursuant to an Order by which this Court:

    a. Awards backpay to be determined by the trier of fact;

    b. Awards compensatory damages to be determined by the trier of fact;

    c. Awards punitive damages to be determined by the trier of fact;

    d. Awards nominal damages to be determined by the trier of fact;

    e. Awards injunctive and equitable relief including, but not limited to, training, backpay, reinstatement and/or reasonable front pay, and modification of Rodgers's personnel file(s);

    f. Awards that relief which is fair, reasonable, and just;

    g. Awards costs against All In Federal Credit Union including a reasonable attorney's fee.

## COUNT I
## RACE DISCRIMINATION
## TITLE VII

82. For purposes of context, Rodgers adopts and incorporates the facts set forth above.

83. Rodgers is bi-racial.

84. During her employment, the Defendant subjected her to different terms and conditions of employment as compared to white employees.

85. Defendant subjected Rodgers to demeaning conduct, such as the Vice President of Human Resources speaking to her in a demeaning and belittling way while not using the same tone and manner to speak or interact with single-race and/or white employees.

86. The Vice President of Human Resources scrutinized Rodgers appearance, behavior, and performance while not doing the same to white employees.

87. Morris, the Vice President of Human Resources addressed other employees of color with a different tone of voice than she used with white employees.

88. The Vice President of Human Resources refused necessary training and direction to Rodgers while not doing the same to single-race and/or white employees.

89. The Vice President of Human Resources issued an overly-critical and inaccurate performance evaluation that did not take into account the Defendant's failure and/or refusal to provide adequate training to Rodgers.

90. The Vice President of Human Resources did not issue overly-critical and inaccurate performance evaluations to single-race and/or white employees.

91. Rodgers being of mixed race was a motivating factor in the negative way the Vice President of Human Resources treated her.

92. AIFCU's negative treatment of Rodgers served to constructively discharge her employment.

93. Defendant's discriminatory behavior injured the Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Rodgers requests this Court enter a judgment against All In Federal Credit Union under Title VII of the Civil Rights Act of 1964, as amended, pursuant to an Order by which this Court:

a. Awards compensatory damages to be determined by the trier of fact;

b. Awards punitive damages to be determined by the trier of fact;

c. Awards nominal damages to be determined by the trier of fact;

d. Awards injunctive and equitable relief including, but not limited to, training, backpay, reinstatement and/or reasonable front pay, and modification of Rodgers's personnel file(s);

e. Awards that relief which is fair, reasonable, and just;

f. Awards costs against All In Federal Credit Union including a reasonable attorney's fee.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

/s/ Heather Newsom Leonard
Heather Newsom Leonard
ATTORNEY FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, PC
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
(205) 977-5421
Heather@HeatherLeonardPC.com

**SERVE THE DEFENDANT VIA PROCESS SERVER:**

All In Federal Credit Union
c/o Robert Michael, Registered Agent
238 Virginia Avenue
Daleville, AL 36322